Lance **CURLEY**, et al., Plaintiffs,

v.

**CUMBERLAND FARMS, INC.**, et al., Defendants.

**Civ. No. 86–5057 (SSB).**

United States District Court,
D. New Jersey.

Jan. 28, 1991.

Fredric J. Gross, Fredric J. Gross Law Firm, Mount Ephraim, N.J., Philip Stephen Fuoco, Office of Philip Stephen Fuoco, Haddonfield, N.J., and Michael R. Needle, Needle & Feldman, Philadelphia, Pa., for plaintiffs.

Nicholas W. McClear, Kathleen Cavenaugh, Sandra G. Corbitt, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for defendants.

## OPINION

BROTMAN, District Judge.

In a opinion and order dated November 16, 1990, the Honorable Jerome B. Simandle, United States Magistrate, denied defendants' motion for a protective order pursuant to Rule 4.2 of the Rules of Professional Conduct ("RPC"). Defendants sought to preclude plaintiffs' counsel from contacting former Cumberland Farm Loss Prevention Specialists *ex parte*. Subject to certain guidelines, the Magistrate's order permits plaintiffs' counsel to contact former Loss Prevention Specialists *ex parte*. Presently before the court is defendants' appeal from the that order.

## I. FACTS AND PROCEDURE

On December 24, 1986, plaintiffs filed a class action suit asserting claims under federal and state racketeering laws, 18 U.S.C. § 1962 and N.J.Stat.Ann. § 2C:41–2, as well as under several other state law theories. Plaintiffs are former employees of convenience stores owned by defendant Cumberland Farms, Inc., or one of its subsidiaries (collectively, "Cumberland Farms"). Plaintiffs allege that defendants engaged in a pattern of extortion, in violation of RICO, by extracting false confessions from them as part of a scheme to cover store losses. The alleged extortionate activity occurred in part during interrogations conducted by Cumberland Farms Loss Prevention Specialists. In an opinion and order dated December 29, 1989, the court, *inter alia*, denied plaintiffs' motion for class certification, expressly indicating that plaintiffs could reapply for class certification after judgment if they were successful at trial. *Curley v. Cumberland Farms Dairy, Inc.*, 728 F.Supp. 1123, 1134 (D.N.J.1989). A thorough discussion of the facts of this case is set forth in that opinion. *Id.*, 728 F.Supp. at 1126–27.

Through discovery, plaintiffs sought the names and last-known addresses of Cumberland Farms' former and present Loss Prevention Specialists. Defendants finally produced this information on September 14, 1990. Prior to the production of the names and addresses, defendants moved before the Magistrate for a protective order prohibiting plaintiffs' counsel from engaging in *ex parte* contacts with the Loss Prevention Specialists on the list, arguing that such contact would violate the ethical rule contained in RPC 4.2. Plaintiffs' counsel agreed not to contact *ex parte* any Loss Prevention Specialists currently employed by Cumberland Farms or any former Loss Prevention Specialists who actually had contact with any of the fourteen plaintiffs in this action. Hence, the issue presented to the Magistrate was whether a protective order should be issued pursuant to RPC 4.2 prohibiting plaintiffs' counsel from contacting *ex parte* 80 former Cumberland Farms Loss Prevention Specialists, none of whom are known to have had contact with the fourteen named plaintiffs in this action.

The Magistrate found that RPC 4.2 does not create a *per se* bar of *ex parte* contacts with former employees of a corporate defendant or plaintiff. *Curley v. Cumberland Farms, Inc., infra*, page 83 ("*Curley*, p. 87"). In that opinion, the Magistrate examined whether the Loss Prevention Specialists previously employed by corporate defendant Cumberland Farms were the equivalent of parties known to be represented by another lawyer, in which case, RPC 4.2 would preclude plaintiffs' counsel from any *ex parte* contacts with them. The Magistrate held that the former Loss Prevention Specialists were not the equivalent of parties known to be represented by another lawyer pursuant to RPC 4.2 as they were not employed on a corporate management level, there was no allegation that they engaged in acts or omissions imputable to the corporate defendant, they are not in a position to bind the corporate defendant by present admissions or co-conspirator statements, and they are not known to be represented by Cumberland Farms' counsel or private counsel in respect to this action. *Id.* at 95. As a result, the Magistrate denied defendants' motion for a protective order prohibiting plaintiffs' counsel's *ex parte* contacts with the former Loss Prevention Specialists, and established guidelines through which plaintiffs' counsel may engage in such contacts in order to ensure plaintiffs' counsel's ethical behavior and to protect defendants' interests. Defendants now appeal from the Magistrate's opinion and order, arguing that the Magistrate's decision was clearly erroneous and an abuse of discretion.

Defendants claim that the Magistrate erred by declining to following the recent decision in *Public Services Electric & Gas Company v. Associated Electric & Gas Insurance Services, Ltd., et al.*, 745 F.Supp. 1037 (D.N.J.1990), ("*PSE & G*") which prohibited all *ex parte* contacts with a corporate party's former employees. They also argue that the Magistrate's finding that there was no present risk of imputation of liability to defendants was contrary to law. As a class action motion is

pending before the court, and as each member of the proposed class would have to establish that he or she was injured by an extortionate act directed towards him or her by one of the Loss Prevention Specialists in order to establish a RICO claim, defendants argue that liability could be imputed to them by a former Loss Prevention Specialist. Plaintiffs posit that the Magistrate's decision should be affirmed as it properly construes RPC 4.2. In addition, plaintiffs argue that defendants' failure to move for a protective order when plaintiffs first requested the names and addresses of the former Loss Prevention Specialists bars defendants' motion for a protective order in any case.

Since the entry of the Magistrate's opinion and order, plaintiffs have again moved for class certification, which, according to defendants, affects the current appeal. The court has not yet decided the class certification motion.

## II. DISCUSSION

Any party may appeal from a Magistrate's determination on a non-dispositive motion. General Rule 40(D)(4)(a). The Magistrate's decision will be set aside only if the District Court finds that the determination was clearly erroneous or contrary to law. *Id.;* Fed.R.Civ.P. 72(a); *see Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

■ The current appeal concerns the Magistrate's finding that RPC 4.2 would not be violated by plaintiffs' counsel's *ex parte* contacts with former Loss Prevention Specialists of defendant Cumberland Farms. Defendants argue that the decision allowing such contacts is clearly erroneous and contrary to law. Plaintiffs have filed opposition to defendants' appeal, and contend that the Magistrate's opinion and order should be affirmed. The ethical rule at issue, RPC 4.2, provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in a matter, unless the lawyer has

the consent of the other lawyer or is authorized by law to do so.

■ Defendants make two arguments in support of the contention that plaintiffs' counsel's *ex parte* contacts with Cumberland Farms' former Loss Prevention Specialists are barred by RPC 4.2. First, defendants cite the recent decision of the Honorable Nicholas H. Politan in *PSE & G,* 745 F.Supp. 1037, for the proposition that the Magistrate's decision is contrary to law. In *PSE & G,* the court found that RPC 4.2 acts as an absolute prohibition against opposing counsel conducting *ex parte* interviews with former employees of a corporation. *Id.,* 745 F.Supp. at 1042. As noted in Magistrate Simandle's opinion, however, the decision of one judge is not binding as *stare decisis* upon another judge of the same court in a different lawsuit. *Curley,* at 86–87, *citing Starbuck v. City & County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977); *United States v. Kerr,* 686 F.Supp. 1174, 1181 (W.D.Pa. 1988); *White v. Baltic Conveyor Co.,* 209 F.Supp. 716, 722 (D.N.J.1962); *see also,* 1B J. Moore, *Federal Practice* ¶ 0.402[1] at 16–17 (3d ed. 1988). The Magistrate's opinion carefully considered the court's decision in *PSE & G,* and ultimately rejected its reasoning. *Curley,* at 86–87. This court agrees with Magistrate Simandle that RPC 4.2 does not create a bright-line test prohibiting all *ex parte* contacts with former employees of a corporate party, and concurs with the reasoning set forth in his opinion in support of this view. *Id.* at 87. Hence, the court does not find the Magistrate's failure to follow the decision in *PSE & G* clearly erroneous or contrary to law.

Defendants' contention that *ex parte* contacts with former Loss Prevention Specialists must be prohibited by RPC 4.2 as the acts or omissions of those former Loss Prevention Specialists are imputable to defendants for the purposes of civil liability, is the more substantial of defendants' two arguments on appeal. Defendants' argument refers to the official ABA comment to RPC 4.2. While the New Jersey Supreme Court did not formally adopt the ABA ex-

planatory comments to the Model Rules when it enacted the RPC, it indicated that the ABA comments should be utilized for assistance in interpreting the RPC. Introduction to the New Jersey RPC. The official ABA comment to RPC 4.2 states:

> In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule.... This rule also covers any person whether or not a party to formal proceeding, who is represented by counsel concerning the matter in question.

Defendants contend that the Magistrate's determination that there is not present risk of imputation of liability to Cumberland Farms is clearly erroneous.

Defendants point to the court's previous opinion in this action, *Curley*, 728 F.Supp. at 1134, where the court noted that plaintiffs could reapply for class certification after judgment, and the fact that plaintiffs have recently reapplied for class certification, in support of their contention that the former Loss Prevention Specialists could impute liability to defendants in this very action. Their argument is that any extortionate acts of the former Loss Prevention Specialists could be imputed to defendants, thereby establishing a pattern under RICO and imposing liability, even though those former Loss Prevention Specialists did not have actual contact with the fourteen plaintiffs named in this action.

At first glance, defendants' argument is very appealing. *If* a former Loss Prevention Specialist reveals damaging information to plaintiffs' counsel, it could indeed result in an imputation of liability to defen-

dants. One could imagine a scenario where a former Loss Prevention Specialist reveals to plaintiffs' counsel that during the course of his employment with Cumberland Farms he extorted confessions from individuals he believed to be innocent, and that he was directed to do so by corporate management. Hence, as defendants' argument goes, it was contrary to law under RPC 4.2 to permit plaintiffs's counsel to contact the former Loss Prevention Specialists *ex parte* as the official ABA comment to RPC 4.2 prohibits *ex parte* contact when a former employee's act or omission "may be imputed to the [corporation] for purposes of civil or criminal liability...." Official ABA Comment to Rule 4.2.

▮ This argument is less persuasive, however, when one recalls that this purported imputation of liability is entirely hypothetical, and would occur in a two-step process. It is possible that the 80 former Loss Prevention Specialists whom plaintiffs wish to contact have *no* relevant information concerning the dispute in this case, or that they possess information which bolsters defendants' case. And in any case, in order to establish their RICO claim, plaintiffs must demonstrate that the Loss Prevention Specialists extorted false confessions from them *and* that defendants directed the extortionate activities. Section 1962(c) RICO liability cannot be imposed upon a corporation merely by imputing the predicate acts of low-level corporate employees upon the corporation under a respondeat superior theory. *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1359 (3d Cir.1987); *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 32–33 (1st Cir.1986). As to plaintiffs' common law claims, criminal or malicious conduct by the former Loss Prevention Specialists cannot be imputed to defendants under the theory of respondeat superior unless that conduct was directed or ratified by defendants. *Curley*, at 88, *citing* Restatement (Second) of Torts § 909.

At this time, defendants themselves have not been in contact with the former Loss Prevention Specialists in order to determine

what they do or do not know and whether any information possessed by the former employees could impute liability to defendants. It must be recalled that the purpose of the ethical restriction of RPC 4.2 is to preserve the integrity of the attorney-client relationship by protecting a represented party from being taken advantage of by adverse counsel. *University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 326 (E.D.Pa.1990); *Frey v. Department of Health and Human Services,* 106 F.R.D. 32, 34 (E.D.N.Y.1985); *Wright v. Group Health Hosp.,* 691 P.2d 564, 567 (Wash. 1984). Here, the former Loss Prevention Specialists should not be regarded as represented parties under RPC 4.2 as any possibility that "any act or omission" of the former Loss Prevention Specialists "may be imputed" to Cumberland Farms is wholly hypothetical. Official ABA Comment to RPC 4.2.

■ This court agrees with Magistrate Simandle's conclusion that the corporate party seeking to establish the equivalent of party-status for its former employees under RPC 4.2 must bear the burden of coming forward with a basis to include those ex-employees within the parameters of RPC 4.2 based on *fact,* not hypotheticals. *See Curley,* at 89, 92–93. Defendants have failed to meet that burden in the instant case. As a result, this court will affirm the decision of the Magistrate, and adopts his reasoning as it finds the Magistrate's opinion persuasive.

As noted above, RPC 4.2 is an ethical rule designed to preserve the integrity of the attorney-client relationship. Magistrate Simandle found that defendants failed to establish that any of the former Loss Prevention Specialists are represented by counsel. *Id.* at 92–93. Nonetheless, Magistrate Simandle recognized that it is hypothetically possible that the former Loss Prevention Specialist have information which could impute liability to defendants, and that defendants are legitimately concerned about such a possibility. As a result, to protect defendants in the unlikely event that the former Loss Prevention Specialists could impute liability to defendants,

he established guidelines for the plaintiffs *ex parte* contact with the 80 former Loss Prevention Specialists. *Id.* at 94–95. This court finds that these guidelines adequately protect the interests of defendants.

This court's rejection of the reasoning of the court in *PSE & G* and the affirmance of the Magistrate's decision in this case, does not mean that an absolute bar of all *ex parte* contacts with former corporate employees is never appropriate pursuant to RPC 4.2. There may be many instances in which such relief would be appropriate. For example, when the party requesting such relief is able to point to specific instances of ethical violations or questionable ethical behavior by opposing counsel with regard to the *ex parte* interviews of former corporate employees, a court could prohibit such interviews pursuant to RPC 4.2. Such a showing has not been made in this case. If such information comes to light, defendants are free, of course, to file a new motion for a protective order before the Magistrate. It must be recalled that RPC 4.2 is an *ethical* rule, not a rule through which corporate parties gain the ability to control the flow of information to opposing parties.

Defendants may have legitimate arguments against the admission into evidence of any *ex parte* statements made by former Loss Prevention Specialists *if* such former employees make any statements imputing liability to defendants. This decision in no way is intended to hinder defendants' ability to raise any evidentiary objections they may have to the admission of such *ex parte* statements in motions *in limine* or at trial.

Magistrate Simandle's ruling will be affirmed for one final and very practical reason. To disallow *ex parte* contacts with all former employees pursuant to RPC 4.2 based on a hypothetical possibility that such employees could impute liability on a party corporation would cause the already substantial costs of litigation to skyrocket and would result in an enormous expenditure of time not mandated by the ethical rule contained in RPC 4.2. It must be recalled that RPC 4.2 is designed to protect the attorney-client relationship, not to con-

trol the flow of information relevant to a lawsuit. The courts cannot permit ethical rules to be used by a party to chill the flow of potentially harmful information to opposing counsel where the danger of an ethical violation is minute. To preclude the informal contacts sought by plaintiffs in this action would be overly burdensome.

## III. CONCLUSION

For the reasons stated above, this court affirms the November 16, 1990 order of the Magistrate permitting *ex parte* contacts with former Loss Prevention Specialists of defendant Cumberland Farms, and adopts the reasoning of the opinion accompanying that order.

An appropriate order will be entered.

## OPINION

November 16, 1990

JEROME B. SIMANDLE, United States Magistrate:

## I. INTRODUCTION

The issue addressed in this case is whether, under Rule 4.2 of the Rules of Professional Conduct ["RPC"] governing attorneys before this court, plaintiffs' counsel may initiate *ex parte* contact with former employees of the defendant Cumberland Farms, Inc., who occupied the position of Loss Prevention Specialist. RPC 4.2 generally prohibits communication by a lawyer regarding the subject of the representation with "a party" known to be represented by another lawyer in the matter. The present motion requires a determination whether the former Loss Prevention Specialists are the equivalent of "parties" represented by Cumberland Farms' counsel in this matter.

## II. PROCEDURAL HISTORY

The fourteen (14) plaintiffs in this case are persons who were employees of convenience stores owned by defendant Cumberland Farms, Inc., or its subsidiaries, at various locations and times ranging from 1973 to 1986. Defendant Cumberland Farms, Inc. [hereinafter "Cumberland"] owns a network of more than 1,000 such stores. The plaintiffs allege that defendants (Cumberland, a related corporation, various officers and managerial employees) engaged in an unlawful pattern and practice of extorting false confessions from them as part of a scheme to cover store losses, in violation of federal and state RICO laws. Plaintiffs have also asserted various pendent state claims including intentional infliction of emotional distress and failure to supervise the employees who conducted the interrogations, who are called Loss Prevention Specialists. Plaintiffs' motion for class certification had been vigorously opposed by Cumberland upon the ground that each plaintiff's interrogation, confession and termination was a separate, unrelated event requiring specific adjudication, and the class certification motion was denied by the Honorable Stanley S. Brotman in *Curley v. Cumberland Farms Dairy, Inc.*, 728 F.Supp. 1123 (D.N.J.1989). A more complete discussion of the background of this case is set forth there.

Plaintiffs had long sought to learn the names and last known addresses of Cumberland's past and present Loss Prevention Specialists. Cumberland's attorney, Nicholas W. McClear, Esquire, promised to provide this list of names and addresses in his letter to plaintiffs' counsel dated June 22, 1990. This court, in an Opinion and Order of July 9, 1990, adopted Mr. McClear's promise to provide these names, and Cumberland was ordered to do so before July 29, 1990, in addition to providing other discovery unrelated to the present motion.

When Cumberland failed to comply with the July 9th Order to produce the list of names, plaintiffs filed the present motion to enforce the Order and for sanctions. Defendants cross-moved upon short notice for a protective order to preclude plaintiffs' counsel from engaging in *ex parte* contacts with the Loss Prevention Specialists [hereafter LPS's] on the list, arguing that any such contact would violate the ethical restrictions of RPC 4.2.

The dispute has narrowed itself. Defense counsel finally produced the list at the hearing on September 14, 1990, and plaintiffs' counsel were directed to make no

contact with these listed persons until the issue of such contacts is resolved. Plaintiffs' counsel agreed to seek no *ex parte* contacts with any LPS presently employed by Cumberland nor with any former LPS who actually had contact with any of the fourteen (14) plaintiffs. As narrowed, defendants wish to preclude plaintiffs' counsel from conducting informal interviews of approximately 80 former LPS's who are not known to have had contact with any of the fourteen (14) plaintiffs.

Plaintiffs assert that the opportunity for informal contact with the former LPS's is necessary to determine, in a speedy and efficient way, whether these persons have relevant knowledge. The prospect of 80 depositions of such former employees, at locations throughout the eastern part of the United States and beyond, including many persons who undoubtedly have little to offer in specific recollection, would be unduly time-consuming and expensive, in plaintiffs' view. Nonetheless, plaintiffs assert that without such interviews they will not be able to learn whether these individuals possess probative knowledge as to the methods and purposes of the alleged interrogation/false confession scheme.

Plaintiffs also allege that defendants waived the right to object to such informal *ex parte* contacts with former LPS's, because defendants knew as early as September, 1989, that at least one former LPS (Eugene Epperson) was cooperating with plaintiffs, as demonstrated by Mr. Epperson's Affidavit filed in September, 1989 in connection with prior motion practice. Defendants made no objection to such contacts, and thereafter agreed to supply the names of the LPS's, as indicated above. Defendants did not raise this issue of seeking limitations upon contacts when engaging in the motion practice leading to the July 9th Order, nor did defendants seek modification or reconsideration of that Order within the time set for their compliance with it.

Defendant Cumberland claims, on the other hand, that these 80 ex-employees should be considered as "parties" who are "known to be represented by counsel" and as to whom no *ex parte* contact by plaintiffs' counsel is permitted by RPC 4.2. Cumberland asserts that statements given by these former employees may be binding upon the corporate employer, or that the conduct of these former employees may be imputed to the corporation for purposes of civil and criminal liability. Defendant alleges that the dispute transcends the present litigation because other suits making similar allegations have been filed or are imminent.

Plaintiffs' counsel acknowledge that they have been contacted by several hundred former Cumberland employees, and that they intend to file a civil complaint on behalf of about 150 who are allegedly similarly situated to the present plaintiffs. Other lawsuits are said to be pending or imminent against Cumberland in Florida, Delaware, Vermont and Massachusetts, and a prospect of criminal investigations of Cumberland's alleged misconduct through its Loss Prevention Program has emerged. Cumberland is concerned that information obtained by plaintiffs' counsel during *ex parte* contacts with these former LPS's will be used against it in other suits or criminal proceedings. Plaintiffs' counsel assert that perhaps tens of thousands of Cumberland's store employees were terminated based upon investigations by the Loss Prevention Department over the past twenty years.

By letter of July 31, 1990, Cumberland's counsel for the first time placed plaintiffs' counsel on notice of Cumberland's position against *ex parte* interviews. Cumberland waited another month before filing the present cross-motion. Furthermore, it does not appear that Cumberland asserts that its counsel has had actual contact with any of the 80 former LPS's, nor that any has requested Cumberland's counsel's assistance or representation by other counsel. Indeed, Cumberland frankly acknowledges that it has had no contact and is unaware of present whereabouts (if different from last known addresses) of many of this group of ex-employees.

## III. DISCUSSION OF LAW

As a preliminary matter, the court must determine whether it has the authority to enter a protective order barring *ex parte* contacts with Cumberland Farms' former Loss Prevention Specialists. Under Rule 26(c), Fed.R.Civ.P., federal courts are empowered to enter protective orders to guard against the use of abusive discovery practices. Nothing in Rule 26(c) itself expressly permits a court to bar all *ex parte* contacts with potential witnesses in civil litigation, but Rule 26(c) does regulate contacts with *parties*. If these witnesses are arguably "parties," then Rule 26(c) confers authority to determine the issue. If these witnesses are not "parties," the power to examine such contacts must derive from the court's inherent power to prohibit litigation practices that raise ethical concerns, and by interpreting and enforcing the court's own ethics rules. This inherent authority has been recognized by several courts faced with similar requests for protective orders barring *ex parte* contacts with a corporate defendant's employees. *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 253 (D.Kan.1988); *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 39 (D.Mass.1987). Thus, this court does have the authority to determine whether the relief requested by Cumberland Farms should be granted and the court will turn its attention to the specific ethical dilemma raised by the instant motion.

The conduct of attorneys practicing before this court is governed by the ABA Rules of Professional Conduct, as revised by the Supreme Court of New Jersey, *see* General Rule 6. The rule giving rise to the current dispute is RPC 4.2 which provides as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in a matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

As indicated above, RPC 4.2 prevents attorneys from engaging in *ex parte* communications with adverse parties who the attorney knows are represented by counsel, in the absence of adverse counsel's consent, or some other type of legal authorization. Courts have stated that the purpose of this restriction is to preserve the integrity of the attorney-client relationship by protecting a represented party from the superior knowledge and skill of opposing counsel. *Frey v. Department of Health and Human Services*, 106 F.R.D. 32, 34 (E.D.N.Y.1985); *Wright v. Group Health Hosp.*, 103 Wash.2d 192, 691 P.2d 564, 567 (1984); *University Patents, Inc. v. Kligman*, 737 F.Supp. 325, 327 (E.D.Pa.1990).

While adopting *verbatim* the American Bar Association's Model Rule 4.2, the New Jersey Supreme Court did not formally adopt the official ABA Comment to the rule. The Introduction to the New Jersey Rules of Professional Conduct states, "The explanatory comments ... have not been adopted by the Court nor should they be considered a formal part of the rules." The introduction does go on to state, however, that "[f]or *assistance* in interpreting these rules, reference should be made to the official ABA Comments and the commentary by the Debevoise Committee in its June 24, 1983 report." [Emphasis added.] Thus, this court is not bound to follow the ABA Comments accompanying the model rule, but these comments should be utilized to assist in interpreting RPC 4.2.

> The ABA Comment to RPC 4.2 states: In the case of an organization, this rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this rule.... This rule also covers any person whether or not a party to a formal

proceeding, who is represented by counsel concerning the matter in question.

Cumberland Farms argues that *ex parte* contacts with its former Loss Prevention Specialists are prohibited by RPC 4.2 because plaintiffs are attempting to impute the acts of these former employees to establish the company's liability for the actions alleged in plaintiffs' complaint, and because statements given by these former employees may constitute admissions by the corporation. Plaintiffs, in opposing this motion, argue that they are not attempting to impute the acts of defendants' Loss Prevention Specialists for purposes of establishing Cumberland Farms' liability in this action, but are instead seeking to interview such persons to show that Cumberland Farms directed these Loss Prevention Specialists to engage in the extortionary conduct allegedly used to coerce confessions from Cumberland Farms' employees. Furthermore, plaintiffs claim that defendants have consented to *ex parte* contacts with its former Loss Prevention Specialists since defense counsel expressly agreed to supply the names and addresses of defendants' 91 Loss Prevention Specialists knowing full well that plaintiffs' counsel intended to contact these persons once such information was supplied, and by failing to timely seek a protective order after entry of this court's July 9th Discovery Order.

Shortly after this motion was argued, counsel and the court became aware of the decision of the Honorable Nicholas H. Politan of this court in *Public Service Electric & Gas Co. v. AEGIS*, 745 F.Supp. 1037 (D.N.J.1990) [hereafter "PSE & G V. AEGIS"]. Counsel have addressed this case in supplemental briefing. That opinion, the only reported New Jersey case interpreting RPC 4.2, holds that *ex parte* interviews of all former employees of a plaintiff corporation concerning a matter in litigation are *per se* violative of RPC 4.2. In that case, PSE & G sought a declaratory judgment that the defendant insurance carrier breached various excess liability insurance policies under which PSE & G sought coverage for property damage claims asserted against PSE & G by the New Jersey Department of Environmental Protection.

The underlying claims concerned environmental contamination at thirty-five coal gasification plant sites owned or previously used by PSE & G throughout New Jersey. An investigation for a defense group sought to locate and interview former PSE & G employees who apparently had worked at these sites. *PSE & G v. AEGIS*, 745 F.Supp. 1037, 1038, 1041. The positions held by the ex-employees, and their connection to the matters in litigation, are unknown and the opinion is silent. The *PSE & G v. AEGIS* opinion examined RPC 4.2 and the accompanying ABA Comment, and determined that the Rule makes no distinction between present and former corporate employees, 745 F.Supp. at 1042, and no distinction between managerial and lower level ex-employees, "if there is the *possibility* of the [witness's] testimony being imputed" to the corporation, *id.* [emphasis in original]. Acknowledging that most other authorities interpreting RPC 4.2 have not reached such a result, the court, understandably seeking to "provid[e] clear guidance to the bar concerning what conduct is prohibited and what conduct is not," announced the "bright line test" by which all informal contacts with a corporate adversary's ex-employees about a matter in litigation are ethically prohibited. 745 F.Supp. at 1042–43.

In interpreting RPC 4.2 to provide a "bright line test" precluding all informal contacts with a corporate adversary's ex-employees, the *PSE & G v. AEGIS* decision stands alone. The only two cases found to have interpreted RPC 4.2 to prohibit *ex parte* contact with former employees, *American Protective Insurance Co. v. MGM Grand Hotel–Las Vegas, Inc.*, Nos. 83–2674, 83–2728 (9th Cir., Dec. 3, 1984), and *Sperber v. Mental Health Council, Inc.*, No. 82 Civ. 7428 (S.D.N.Y., Nov. 21, 1983), were subsequently both vacated and withdrawn by the deciding courts, and are of no precedential value. Even those cases did not involve blanket prohibitions irrespective of the roles of the former employees, as discussed below.

Although the decision of one judge is not binding as *stare decisis* upon another judge

of the same court in a different case with different litigants, the prior interpretation is entitled to respect and deference, but not necessarily controlling weight. *Starbuck v. City & County of San Francisco*, 556 F.2d 450, 457, n. 13 (9th Cir.1977); *United States v. Kerr*, 686 F.Supp. 1174, 1181 (W.D.Pa.1988); *White v. Baltic Conveyor Co.*, 209 F.Supp. 716, 722 (D.N.J.1962); *see also* 1B J. Moore, *Federal Practice* ¶ 0.402[1] at 16–17 (3d ed. 1988).

Notwithstanding deference to the prior authority and esteem for the deciding jurist, it appears, for reasons next discussed, that the teachings of *PSE & G v. AEGIS* should not be followed in the present case. The clear weight of authority and the carefully chosen wording of RPC 4.2 and the ABA Comment do not admit of a "bright line test," no matter how desirable the need for clarity might be in matters of ethics. Each opinion reaching the issue has found either that RPC 4.2 has no impact at all upon communications with ex-employees, *see, e.g., University Patents, Inc. v. Kligman*, 737 F.Supp. 325, 328 (E.D.Pa.1990) ["the prohibition does not appear generally to encompass all former employees"]; *Siguel v. Trustees of Tufts College*, 1990 WL 29199, 1990 Lexis 2775, 52 F.E.P. Cases 697 (D.Mass.1990); *Porter v. Arco Metals Co., Division of Atlantic Richfield Corp.*, 642 F.Supp. 1116, 1118 (D.Mont.1986); *Bobele v. Superior Court*, 199 Cal.App.3d 708, 245 Cal.Rptr. 144, 146 (App.1988); *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990) [holding that DR–7–104(A)(1), predecessor to RPC 4.2, applies only to current employees, not former employees], or that informal contact with ex-employees is generally permissible absent a showing that the acts or omissions of the particular ex-employee are imputable to the corporation, *see, e.g., Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36 at 40–41 [corporation's "conclusory assertion" of imputation is not sufficient]; *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 253 (D.Kan.1988) [dictum, as the employees at issue were all present employees].

These decisions of other jurisdictions interpreting RPC 4.2 are significant because New Jersey adopted the ABA Model RPC 4.2 without change and without specific comment by the Debevoise Commission, *see* 111 *N.J.L.J.* (July 28, 1983) [Special Supp.].

RPC 4.2 itself is similar to its predecessor, Disciplinary Rule 7–104(A)(1), which provides:

(A) During the course of his representation of a client a lawyer shall not:

(1) communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in the matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

The interests protected by DR 7–104(A)(1), like RPC 4.2, are said to include: "(1) preventing adverse counsel from taking advantage of a represented party through ex parte contact; (2) protecting the represented party's right to effective representation; and (3) promoting ethical behavior on the part of attorneys." J. Krulewitch, "Ex Parte Communication with Corporate Parties: The Scope of the Limitations on Attorney Communications with One of Adverse Interest," 82 *Nw.U.L.Rev.*, 1274, 1277 (1988). The rule has been roundly criticized as protecting interests of attorneys rather than clients, *see* J. Leubsdorf, "Communicating with Another Lawyer's Client: The Lawyer's Veto and the Client's Interests," 127 *U.Pa.L.Rev.* 683, 686–693 (1979).

The court's function in interpreting a written rule of conduct previously adopted by this court is to give life to the intent of the drafters as expressed through the language they have chosen. The desirability of the rule is not for present debate, and we turn to its interpretation noting that neither Krulewitch nor Leubsdorf, above, discuss the applicability of RPC 4.2 [or DR 7–104(A)(1) ] to ex-employees.

Neither the fact that ex-employees may have important knowledge nor the obvious fact that the corporate defendant may prefer not to have plaintiffs' counsel contact its ex-employees is sufficient to preclude contact. The text of RPC 4.2 makes clear that such contacts regarding a matter of litigation are forbidden only if the individu-

al is (1) the equivalent of a "party" and (2) known to be represented by another lawyer. These two prongs are next examined.

## A. *Are the former LPS's "parties"?*

The equivalent of a party under RPC 4.2 in the context of a corporate employee arises if the person is either (1) a person "having *managerial responsibility* on behalf of the organization" or (2) a person "whose act or omission in connection with that matter *may be imputed* to the organization for purposes of civil or criminal liability" or (3) a person "whose statement may constitute an *admission* on the part of the organization." ABA Comment to RPC 4.2, *supra* [emphasis added].

### 1. Managerial responsibilities.

The first prong of the RPC 4.2 test would preclude contact with persons having corporate managerial responsibilities. These former LPS's did not enjoy managerial responsibilities. They were internal investigators who had authority to conduct surveillance, interview employees and seek recovery of losses, but they certainly were not corporate managers. The policy of RPC 4.2 to preclude *ex parte* contacts with adverse corporate managers concerning matters in litigation is designed to protect the corporations's privileged information within a manager's knowledge, *see* Hazard & Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct*, 436 (Supp.1989), cited in *PSE & G v. AEGIS, supra,* 745 F.Supp. at 1041. This consideration is not present here.

### 2. Whether conduct "may be imputed"

Whether acts or omissions of these former employees "may be imputed" to Cumberland requires closer analysis. This, of course, is the issue principally addressed in *PSE & G v. AEGIS, supra.* In the present suit, none of the 80 former LPS's are believed to have had any contact with the present plaintiffs. In the absence of such contact, it is an extremely remote possibility that their conduct will be imputable to Cumberland in this case. Plaintiffs' counsel have also indicated that they do not seek to impute the conduct of *any* LPS's to Cumberland; their case is instead premised upon establishing the existence of an unlawful policy made at the corporate officer level, which was merely carried out by low-level employees such as the LPS's. That an LPS may have engaged in extracting a false confession by threatening prosecution, for example, is alleged by plaintiffs to serve only as a product of the unlawful corporate-level scheme formulated and managed at higher levels. Cumberland denies that any LPS engaged in such conduct and that such a corporate policy existed, but it argues that the conduct of these LPS's may be imputed to it in this case and other cases under the doctrine of respondeat superior. The plaintiffs' corporate liability theory is a top-down policy, while the defendant fears a bottom-up imputation of liability arising from acts of LPS's.

The present dispute does not involve contacts with former LPS's who are believed to have conducted interviews of the plaintiffs. The former employees are instead persons believed by plaintiffs to have relevant knowledge, like witnesses to an accident who did not participate in the accident. Their areas of knowledge and conduct are, as noted, unknown because neither side has acknowledged contact with them.

Under the theory of respondeat superior, the tortious conduct of an employee may be imputed to the employer where the tortious conduct occurs while the employee is acting within the scope of his or her employment. *Di Cosala v. Kay,* 91 N.J. 159, 169, 450 A.2d 508 (1982); Restatement 2d, Agency § 219 (1958). Conduct which is criminal or malicious may not be imputed unless it was directed or ratified by the employer. *See, e.g.,* Restatement (Second) of Torts § 909.

Plaintiffs' RICO causes do not seek to impute such liability from the acts or omissions of the LPS's, but rather from the conduct of the corporate officers and managers who are alleged to form the "enterprise." Their tort claims include malicious prosecution, infliction of emotional distress and corporate failure to supervise the Loss Prevention Department's activities.

Whether a person's conduct "may be imputed" means something more than a fanciful construct of potential liability, and it

must be determined instead by reference to the circumstances of the case. There must be a focus drawn to the conduct of the individual (that is, the person's own "act or omission," as the Comment states) so that a fair-minded person could foresee imputation of liability if plaintiffs' allegations are true.

The foreseeability of imputation of liability is largely unknowable until the conduct of these 80 LPS's is examined. Plaintiffs adamantly assert no such imputation will arise, because these LPS's had no contact with plaintiffs and because plaintiffs' theories of liability are top-down, as discussed above. Plaintiffs' counsel have also represented to this court that they do not seek these interviews to develop discovery for other possible cases, but rather to prepare for trial of the present case. Defendant Cumberland itself has not identified *any* of these 80 former LPS's as playing a central role in these matters. Cumberland would instead seek to preclude all contacts by plaintiffs' counsel unless imputation of liability could be ruled out.

Under the *PSE & G v. AEGIS* test, it would not matter that these circumstances present an unlikely case for imputing liability where the witnesses' conduct and knowledge are unknown. It was sufficient in that case to find merely a possibility that "a former employee's acts or omissions *could be* imputed, *under any factual scenario,* to the organization," 745 F.Supp. at 1040–41 [emphasis added]. The ABA Comment to RPC 4.2 has carefully selected different language, concerning itself with "any other persons whose act or omission in connection with that matter may be imputed to the organization...." Whether the act or omission "may" be imputed suggests both some degree of knowledge of the person's conduct and some assessment of likelihood that the conduct may give rise to liability. If the framers of RPC 4.2 wished to ethically restrain all contact with a corporation's employees (let alone ex-employees), the rule would undoubtedly have been fashioned differently. The holding in *PSE & G v. AEGIS* is so broad that if it were applied to the present case, the plaintiffs themselves (being ex-employees of defendant Cumberland) could not have their lawyer discuss this case with other former employees however situated. Such a result would be untenable.

RPC 4.2 does not work so broadly to protect the corporate party from informal discovery of hypothetical liability. One can imagine circumstances in this case or others where facts could emerge from an interview of one or more former LPS's that could form a basis for imputing tort liability. But such free-ranging hypothecation is not sufficient to prevent contact with a group of 80 ex-employees, none of whom is believed to have had contact with plaintiffs. If RPC 4.2 were read that broadly, informal contact with present and former employees of an adverse corporation would almost never be permitted, because one could almost always conjure up a "scenario" in which it would be learned that somebody did something that "could" be imputable to the corporation. By seeking to broadly prohibit plaintiffs' contacts with all 80 ex-employees, Cumberland would have this court extract from plaintiffs the high price of formalized discovery unjustified by any showing Cumberland has made with respect to the risk of imputed liability arising from any of these ex-employees' acts or omissions. The burden of coming forward with a basis for shielding these ex-employees is placed upon the corporate party seeking to establish the equivalent party status for its ex-employees under RPC 4.2, as discussed in subpart B, below.

Defendant Cumberland has pointed to no precedent interpreting RPC 4.2, other than *PSE & G v. AEGIS,* in which generalized fears of imputed liability have sufficed to preclude informal contact with a group of employees or ex-employees. In each case the role of the protected employee or ex-employee has been *central* and *obvious.* Sometimes the person has been a member of the corporate "control group," *see Bobele v. Superior Court,* 199 Cal.App.3d 708, 245 Cal.Rptr. 144, 146 (1988); *In re Investigation of FMC Corp.,* 430 F.Supp. 1108, 1110–11 (S.D.W.Va.1977). Or the protected persons have occupied obviously central positions in the dispute at hand,

such as the plaintiff university's departmental chairmen and deans who controlled defendant's patent research and exploitation which were at the heart of plaintiff's suit. *University Patents, Inc. v. Kligman*, 737 F.Supp. 325 (E.D.Pa.1990). Or, as in *Chancellor v. Boeing Co.*, 678 F.Supp. 250 (D.Kan.1988), informal contact was precluded with present employees who occupied managerial positions and all employees who were involved in the decision to deny promotion of plaintiff, which was the subject matter of the suit. The only two cases extending RPC 4.2's prohibition to *ex parte* contact with former employees, namely, *American Protective Insurance Co. v. MGM Grand Hotel–Las Vegas, Inc.*, *supra*, and *Sperber v. Mental Health Council, Inc.*, *supra*, which were subsequently vacated and withdrawn by the deciding courts, nonetheless involved circumstances in which the centrality of the protected ex-employees to the disputed liability issues was clear. Such is not the case here, in which *neither* litigant is aware of the roles played by the former LPS's, other than the fact that none is believed to have had contact with any plaintiff.

Indeed, *ex parte* contact was held to be proper even in cases where the person contacted was, unlike the present instance, an active employee whose conduct was central to plaintiff's case against the organizational defendant, as in *Morrison v. Brandeis University*, 125 F.R.D. 14 (D.Mass.1989) [permitting *ex parte* interviews of members of defendants tenure committee who voted to deny tenure to plaintiff]; *see also Mompoint v. Lotus Development Corp.*, 110 F.R.D. 414, 418 (D.Mass.1986) [plaintiff's counsel in Title VII action permitted to conduct *ex parte* contacts with female employees of the defendant who allegedly lodged complaints against the plaintiff for improperly requesting sexual favors which defendant insisted resulted in plaintiff's termination from the company]; *Lozotte v. NYCHHC*, 1990 Lexis 2747 (S.D.N.Y., Mar. 13, 1990) [*ex parte* contacts with current employees of defendant psychiatric hospital allowed in civil rights action challenging the constitutionality of conditions at the state facility]; and *Siguel v. Trustees of Tufts College*, 1990 WL 29199, 1990 Lexis 2775 (D.Mass. March 12, 1990) [*ex parte* communications with present and former employees of Tufts University permitted; the court noting that a former employee's statements do not constitute admissions under Rule 801(d)(2), Fed.R.Evid. since such statements would not be made "during the existence of the [employment] relationship," p. 7.] In each of these cases, the conduct of the non-protected employee was far more directly determinative of the organizational defendant's liability than the present case, and yet the *ex parte* contacts by adverse counsel were not unethical under RPC 4.2 or its near-twin, DR 7–104(A)(1).

Finally, an expansive reading of the imputed liability clause to preclude informal interviews with all former employees would extract an enormous price unwarranted by the ethical concerns. Where such contacts are numerous and formalized, the cost of depositions becomes too great for some litigants to bear, the accessibility to the truth-finding process is impaired, and valuable litigation time is wasted before one even could learn whether the witness has relevant knowledge. It would render scant justice to these plaintiffs to say, in the present context, that their counsel may learn nothing of the locations and knowledge possessed by these 80 peripheral ex-employees without conducting expensive and time-consuming depositions. Routine informal interviews of such persons who are not believed to be central to the case are a staple of good, ethical trial preparation. Any new rule sweeping aside all such interviews should be well-grounded and fully considered before extracting so high a price. This point is echoed by Professor Krulewitch, who has stated, in 82 *Nw.U.L. Rev.* at 1278, *supra:*

> Interviews, as discovery tools, provide an attorney with the opportunity to informally contact adverse witnesses and other nonparties in an effort to discover the truth. Because the attorney as advocate is obliged to search out the truth and then present that truth to the court in the light most favorable to her client,

any rule that limits the attorney's access to the truth necessarily contravenes a basic aim of our legal system.

A rule that prevents opposing counsel from informally interviewing a possible witness because the witness is considered a "party" to the suit frustrates the search for truth....

In evaluating the scope of *ex parte* interviews, the value of discovering the truth should be balanced against the possible burdens and dangers that accompany the interview process [footnotes omitted].

Where, as in the present case, the roles and knowledge of the lower-level ex-employees are speculative, and in any event are not central and obvious, RPC 4.2 does not operate with sufficient force to presumptively preclude informal contacts by adverse counsel.

In summary, informal interviews of former non-managerial employees of a corporate defendant are not ethically prohibited by RPC 4.2 unless the person's act or omission is believed to be so central and obvious to a determination of corporate liability that the person's conduct may be imputed to the corporation. By focusing upon acts or omissions, the "imputed liability" prong of RPC 4.2 precludes such contacts only with actors, nor mere witnesses. If it is not reasonably likely that the person may be a central actor for liability purposes, nothing in RPC 4.2 precludes informal contact with such a former employee. Absent such circumstances, RPC 4.2 does not empower the organization to create a fiction-piece in which its attorney is deemed to represent former employees for the sake of barring an adversary's informal contacts with them. Moreover, in a case in which the ex-employee's role is unknown before such interviews but may later be learned to include acts or omissions imputable to the corporation, a court may impose protective measures to cure the prospect of prejudice to the corporate adversary, as discussed further below.

For these reasons, it is held that the 80 former LPS's are not reasonably believed to be persons whose acts or omissions may be imputed to the organization in the present case, and whose roles in other cases are unknown and speculative, such that these ex-employees are not the equivalent of "parties" upon the imputed liability ground of RPC 4.2.

### 3. Whether statements may constitute admissions

The prevalent rationale of precluding informal interviews with a represented organization's employee under RPC 4.2 is to protect the represented party from admissions made by an employee to the adversary concerning matters in dispute. Admissions arise in the organization context where an employee or representative of the company makes a statement on behalf of the organization, or a statement adopted by the organization, or under authorization of the organization, or concerning a matter within the scope of the agency or employment made during the existence of the relationship as set forth in Rule 801(d)(2)(A)–(D), Fed.R.Evid.[1] Additionally, a statement made by a coconspirator of a party during the course and in furtherance of the conspiracy can constitute an admission of the party once the existence of the conspiracy is shown by facts outside the statement, under Rule 801(d)(2)(E), Fed.R. Evid.

Generally, adverse counsel may not speak to employees of the corporation who by virtue of their authority are able to bind the company in the matter at hand, *Niesig v. Team I, supra; Amarin Plastics, Inc. v. Maryland Cup Corp., supra,* at 40; *Wright, supra,* 691 P.2d at 569; ABA In-

---

1. Fed.R.Evid. 801(d)(2) provides:

   **Admission by party-opponent.** The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

formal Opinion 1410 (1978) ["If the officers and employees that (a lawyer) propose(s) to interview could commit the corporation because of their authority as corporate officers or employees or for some other reason the law cloaks them with authority, then they, as the alter egos of the corporation, are parties for purposes of D.R. 7-104(A)(1)" [predecessor to RPC 4.2].]

In the present case, plaintiffs have agreed to not have contact with present Cumberland LPS employees as well as the half-dozen former LPS employees who actually interrogated the plaintiffs. In the case of the former LPS employees at issue, defendant has not posited a plausible theory under which these ex-employees could make statements today that bind Cumberland. Under the admissions rule of Fed.R. Evid. 801(d)(2), *supra,* there is no logical basis to believe that these former low-level employees can make a statement to plaintiffs' counsel that can later be used to bind Cumberland under any theory of Rule 801(d)(2). No one could claim that a former LPS acts today in a "representative capacity" for Cumberland, under Rule 801(d)(2)(A). Certainly Cumberland cannot be held to "manifest an adoption or belief in its truth" as to a current statement made outside its presence to adverse counsel, under Rule 801(d)(2)(B). No former LPS could possibly be claimed to be a person "authorized" by Cumberland to make a statement on Cumberland's behalf, under Rule 801(d)(2)(C). Although the former LPS may choose to make a statement to plaintiffs' counsel concerning matters within the scope of the person's former employment, the employment relationship has ended for each of these former LPS's and any such statement made today could not be "made during the existence of the relationship," under Rule 801(d)(2)(D). Finally, no former LPS is alleged to be a coconspirator with Cumberland in plaintiffs' RICO conspiracy claims, so the coconspirator exception of Rule 801(d)(2)(E) would not apply, and even if the former LPS is an alleged coconspirator, his or her statement today to plaintiffs' counsel could not reasonably be seen as being uttered "during the course

and in furtherance of the conspiracy" as Rule 801(d)(2)(E) requires.

Furthermore, no case has been found under RPC 4.2 in which contacts with an ex-employee were barred upon the ground of protecting the organization from admissions. The concern of the admissions prong of RPC 4.2 instead rests principally upon preventing the *ex parte* communication with "control group" members or other high corporate managers who may, by virtue of their position and authority, bind the organization that employs them. This concern is absent in the circumstances before this court, as discussed, because the subjects of these contacts would be lower level ex-employees having no present authority to bind their former employer. It may be correct to state, as several courts have, the clear general rule that persons who are no longer employed by the organization are unable to bind it by their present statements, *see Niesig v. Team I, supra; Porter v. Arco Metals, Division of Atlantic Richfield, supra,* at 1118; *Bobele, supra,* 245 Cal.Rptr. at 147. For present purposes, although no exceptions come to mind, it is not necessary to state an absolute rule. For these reasons, it is held that 80 former LPS's are not the equivalent of "parties" under RPC 4.2 arising from any capability of binding Cumberland.

In summary, because these former LPS employees lack managerial responsibility, are not the subject of imputed liability herein [and are unknown to be so in any related case], and are incapable of making an admission binding upon the corporate defendant, there is no basis to find that they are the equivalent of "parties" under RPC 4.2, and informal contact with them is permissible, subject to protective conditions in subpart C, below.

B. *Representation by corporate counsel*

Under RPC 4.2, *ex parte* contact is precluded with a person known to be represented by another attorney. If the former LPS employees were "parties" under RPC 4.2, contrary to this court's findings above, *ex parte* contact would be precluded outside the presence of the corporate defense counsel. Even if these former employees

are not the equivalent of parties, however, *ex parte* contact is precluded if they are known to be "represented by counsel concerning the matter in question," under ABA Comment to RPC 4.2, *supra.*

No evidence suggests that any of the 80 former LPS employees is represented by counsel. None appears to have conferred with Cumberland's counsel and sought assistance, nor is there a basis for reasons discussed above, for implying such an attorney-client relationship with Cumberland's former employees, especially in a suit which is itself brought by its ex-employees. Defense counsel has compiled an identification list from corporate records, not from personal contacts. Last known addresses may be quite out of date, again evidencing lack of contact. The burden of establishing an attorney-client relationship is upon the party asserting its existence, who must show, under New Jersey law, a consensual undertaking of representation by an attorney on behalf of a client. *In re Palmieri*, 76 N.J. 51, 58, 385 A.2d 856 (1978).[2] As applied to this case, Cumberland must show a plausible basis for deeming the existence of an attorney-client relationship under RPC 4.2.

Cumberland has not shown that any of these individuals has sought legal advice, much less that a relationship has been formed for purposes of offering such legal advice.[3] If it develops that a former LPS has retained counsel with respect to this matter, then contact by plaintiffs' counsel in this case may occur under RPC 4.2 only through retained counsel or with retained counsel's consent. This court will assume that plaintiffs' counsel will act ethically in this regard.

For these reasons, it is obvious that the 80 former LPS's are not persons known to be represented by counsel under RPC 4.2, and defendant Cumberland's cross-motion to preclude *ex parte* contacts will be denied.

### C. *Discoverability of Plaintiffs' Counsel's Interview Notes and Statements*

Under this court's view, plaintiffs' counsel are free to interview the 80 former LPS employees, outside the presence of opposing counsel. One must recognize, as *PSE & G v. AEGIS* so clearly demonstrates, that there is a dilemma in considering *ex parte* contacts when the extent of the former employee's knowledge and participation in the underlying conduct are unknown. If the interview, contrary to expectations, yields information imputable to the organization's liability, then it may become the equivalent of a party's statement, discoverable by the organization under rule 26(b)(3). If the interview yields little or nothing pertaining to the corporate liability, then any prospect of harm to the corporate interest was unfounded.

Unlike *PSE & G v. AEGIS*, however, it seems unnecessary and undesirable to resolve the dilemma in favor of total preclusion and the labeling of conduct as unethical, when a protective mechanism can be employed to permit at least preliminary

---

**2.** In *PSE & G v. AEGIS*, the court relieved PSE & G from any burden of establishing that its former employees were the equivalent of parties represented by counsel, noting that:

> [I]t is impossible to tell whether an individual's acts or omissions may be imputed until that individual has testified to those acts. It is thus unworkable to require the organization, as the Court did in *Amarin*, to make a showing concerning an individual's projected testimony prior to prohibiting *ex parte* contact with the individual. Such a procedure would, in effect, require the organization to divulge facts which would ordinarily be developed through the deposition process. The Rule would, therefore, operate to favor the party seeking *ex parte* contact.

*PSE & G v. AEGIS*, 745 F.Supp. at 1042. The Rules of Professional Conduct must be read as a whole, and the burden of demonstrating an attorney-client relationship rests with the party claiming its benefit, *In re Palmieri, supra.* It is therefore not unfair to expect the organizational party to come forth with a basis for precluding informal contact with ex-employees because (1) the organization seeks to establish the equivalent of an attorney-client relationship that is real and not fictional, and (2) the organization possesses the knowledge, through the individual it is attempting to shield from *ex parte* contact.

**3.** Indeed, Cumberland has still not suggested, by proffer or otherwise, that *any* of these 80 former employees has probative knowledge or played an important corporate role with respect to matters raised in the complaint, in the four (4) months that have to date elapsed since the July 9th order compelling disclosure of the lists of Loss Prevention Specialists.

information to flow informally with little prospect of harm to the adversarial process. Namely, as a protective measure, the court can condition such *ex parte* interviews of these former employees upon an obligation to inform opposing counsel regarding such interviews and to provide copies of interview notes and statements, as now discussed.

At oral argument, plaintiffs' counsel offered to make their interview notes and any statements obtained from these ex-employees available upon request to defense counsel. Plaintiffs' counsel are willing to waive their work-product protection, pursuant to Rule 26(b)(3), Fed.R.Civ.P., in order to accommodate defense counsel by exposing such interviews to after-the-fact scrutiny.

In the present circumstances, such a waiver of work-product protection is justified and is a reasonable accommodation of the needs of defense counsel, for several reasons. *First*, the informal interviews are an efficient means for determining whether these ex-employees have relevant information. *Second*, such notes of counsel will include the efforts undertaken by plaintiffs' counsel to locate these individuals, many of whom are unknown to Cumberland today, and thus avoid duplicative efforts. *Third*, such notes will apprise defense counsel of whether such ex-employees have retained counsel, so that all counsel may follow appropriate procedures. *Fourth*, such notes and statements will apprise defense counsel of the identities of former employees who have given statements to plaintiffs' counsel and those who have refused to do so. *Fifth*, such statements may form the basis for drawing a focus upon the particular person's role, if any, with respect to possible liability of Cumberland, identifying those former LPS's, if any, whose conduct "may be imputed to the organization for purposes of civil or criminal liability," under ABA Comment to RPC 4.2, *supra*. If Cumberland identifies such a person and shows that the person is the equivalent of a party under RPC 4.2 represented by counsel, then future contacts may occur only through counsel, *see Amarin Plastics, Inc. v. Maryland Cup Corp., supra. Sixth*, any concern

that defendants may harbor about plaintiffs using informal interviews in this case to obtain discovery from persons whose conduct may become central and obvious for imputing corporate liability in some future case is allayed by these provisions for full and prompt work-product disclosure to defense counsel.

Taking these concerns into account, several guidelines for plaintiffs' contact with the 80 former Loss Prevention Specialists emerge [hereafter "Guidelines"]:

1. Plaintiffs' counsel shall keep a log of efforts to contact these former LPS's by date, time, effort undertaken, result, and person sought or contacted.

2. Plaintiffs' counsel shall determine whether the person contacted is represented by counsel with respect to these matters, and the name and address of such counsel, and, if so, shall terminate the contact before discussing the subject matter of these cases and clearly note these facts. Plaintiffs' counsel shall also observe RPC 4.3 in their dealings with unrepresented individuals.

3. Plaintiffs' counsel shall maintain notes of such contacts, whether by telephone or in person, for each person and each interview. The notes shall reflect the determination of representation by counsel required by (2) above, and the substance of the facts obtained from the person.

4. If a written statement is obtained, or if an oral statement is obtained, the witness statement shall be memorialized in its entirety and shall contain all necessary identifying data and the date obtained.

5. Upon request by defense counsel, a copy of each log entry, counsel note and witness statement shall be supplied within seven (7) days of demand for same. Plaintiffs' counsel shall seasonably supplement these items as they accrue, and shall serve copies of same with respect to each month's activities not later than the 7th day of the month following such contact.

6. Nothing herein requires or anticipates the discovery of plaintiffs'

counsel's core work product, including tactics and impressions derived from the above documents, so long as all information in the log entries, counsel notes and witness statements is supplied.

7. Nothing herein precludes any party from obtaining a deposition under oath from any of these persons upon due notice to all counsel in accordance with the Federal Rules of Civil Procedure and within the deadline for concluding factual discovery in this case.

These procedures, in this court's view, provide additional safeguards to defendant Cumberland that it will be informed of its adversary's informal discovery efforts and of any change in the status of these persons under which RPC 4.2 would preclude further informal contacts. This concession by plaintiffs' counsel serves as a suitable and efficient double-check upon plaintiffs' counsel's ethical behavior, as an early-warning device if problems develop, and as an information clearing-house that minimizes redundant investigative efforts, while saving all parties the considerable time and expense of perhaps 80 discovery depositions, many of which may be of little or no usefulness to either side.

## IV. CONCLUSION

For the above reasons, this court holds that RPC 4.2 does not preclude *ex parte* contacts by plaintiffs' counsel with 80 former employees of the corporate defendant, because such employees did not occupy a corporate-level managerial capacity, are not alleged to have engaged in acts or omissions which may be imputed to the corporate defendant, and are not in a position to bind the corporate defendant by present admissions or co-conspirator statements; further, these former employees are not known to be represented by either Cumberland's counsel or private counsel in respect to these matters.

Accordingly, defendant's cross-motion for a protective order to preclude *ex parte* contacts will be denied, and plaintiffs' counsel may engage in such contacts provided that the above Guidelines are observed,

including timely production of plaintiffs' counsels' log entries, counsel notes and witness statements.

Plaintiffs' motion for a finding of contempt is dismissed as moot, as defendant Cumberland eventually produced the list of Loss Prevention Specialists' names and addresses as required by this court's Letter Opinion and Order of July 9, 1990. Plaintiffs' request for costs and fees under Rules 26(c) and 37(a)(4) [with respect to opposing defendant's unsuccessful motion for a protective order] and pursuant to Rule 37(b)(2) [with respect to compelling compliance with the July 9th Discovery Order] are denied because defendant's position, although tardily asserted and incorrect, was not lacking in substantial justification.

The accompanying Order will be entered.

November 16, 1990
Date

## ORDER

This matter having been brought before the court upon motion of plaintiffs to enforce the court's Order of July 9, 1990, to compel defendants to produce a list of names and addresses of Loss Prevention Specialists; and

The defendants having cross-moved for a protective order to preclude plaintiffs' counsel from engaging in *ex parte* contacts with the Loss Prevention Specialists on the list; and

Having considered the submissions and oral arguments of counsel and supplemental submissions; and the defendants having subsequently produced the list of Loss Prevention Specialists, and the plaintiffs having agreed to seek no contacts with presently employed Loss Prevention Specialists nor with any former Loss Prevention Specialist believed to have had contact with these plaintiffs, so that the dispute is narrowed to the issue of informal contacts between plaintiffs' counsel and former Loss Prevention Specialists no longer employed by defendant Cumberland Farms who are not believed to have had contact with plaintiffs in this case; and

For reasons set forth in the Opinion of today's date;

IT IS this 16th day of November, 1990, hereby

ORDERED that plaintiffs' motion to compel defendants to produce the list is *dismissed* as moot, the list having been supplied, and plaintiffs' application for sanctions is *denied* without prejudice; and

IT IS FURTHER ORDERED that defendants' motion for a protective order to preclude plaintiffs' counsel from engaging in *ex parte* contacts with the former Loss Prevention Specialists is *denied,* and plaintiffs' counsel may engage in such informal contacts, subject to the conditions set forth in the "Guidelines" in Part III. C of this Opinion. Such contacts, however, shall not be commenced until the expiration of ten (10) days excluding Saturdays, Sundays and court holidays, after the filing of this Order.